[Cite as *State v. Anthony*, 2013-Ohio-5652.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-021** |
| CRAIG A. ANTHONY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 12 CR 000071.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Alana A. Rezaee*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077. (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Craig A. Anthony, appeals his conviction, following a jury trial in the Lake County Court of Common Pleas, for aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1). Based on the following, we affirm.

{¶2} Appellant was indicted for aggravated burglary on Count 1, which carried a repeat violent offender specification. A jury trial was held, and the following pertinent testimony and evidence was presented.

{¶3} Appellant and April March were involved in a relationship and lived together at appellant's residence. In early January 2012, Ms. March moved out and relocated to a new home in Painesville, Ohio. That night, Ms. March testified that appellant called her telephone and threatened to kill her. Ms. March indicated she was able to determine that appellant had been drinking.

{¶4} According to appellant, he was concerned that Ms. March, his former girlfriend, was having a sexual relationship with another man. Therefore, appellant went to Ms. March's home shortly before 1:00 a.m. on January 14, 2012. Once at Ms. March's residence, appellant began banging on the side door. Inside the home were Ms. March; her daughter, Mariah McCraney; and Ms. McCraney's friend. Ms. March instructed her daughter and her daughter's friend to go into a bedroom on the first floor. Ms. McCraney called 9-1-1.

{¶5} After knocking on the side door to no avail, appellant moved to the front door of the residence. According to the testimony of Ms. McCraney, appellant began yelling: "Open the door. I know she's in there. I'm going to kick it down. Open the door."

{¶6} Ms. McCraney then testified that appellant kicked in the front door and charged at her while she was on the phone with the 9-1-1 dispatcher. Appellant slammed her cellular phone onto the ground, disconnecting the call. The jury heard the 9-1-1 recording whereby Ms. McCraney related the events of the evening, ending with

2

appellant yelling: "I'm not f---ing playing. * * * Hang up, hang up. I swear to God hang up." Shortly thereafter, the 9-1-1 call terminated.

{¶7} There was testimony that inside the home, appellant pushed Ms. McCraney into the dresser. When appellant heard noise coming from upstairs, he headed upstairs to where Ms. March was located. In an effort to prevent him from ascending the stairs, Ms. McCraney grabbed him, and the two began to struggle. The police arrived, and the struggle ceased. As indicated in the police report, Ms. McCraney's injuries were not readily apparent at the scene of the incident. However, Ms. McCraney testified that she suffered bruising, scratches, and soreness from her struggle with appellant.

{¶8} Ms. March testified that she ran upstairs in an effort to escape from appellant. She stated that she thought she would be able to hide in an upstairs room, but her niece had items stored there. Instead, she maneuvered through a door onto a flat roof. Ms. March testified that she slipped and fell off the roof onto plastic chairs below and suffered several cuts.

{¶9} Officer Baldrey of the Painesville City Police Department testified that when he arrived at the scene appellant exited the front door with his hands in the air. Officer Baldrey further testified that he noticed a strong odor of alcohol on appellant and described appellant as "agitated." Appellant relayed to Officer Baldrey that he believed his ex-girlfriend, Ms. March, was "screwing another male at the house." After placing appellant in the cruiser, Officer Baldrey returned inside.

{¶10} Officer Baldrey testified that he observed "fresh damage" to the front door: there was "fresh plaster and wood splinters on the floor that would indicate that it was

3

new damage." Further, there was a piece of wood lying across the living room floor with nails sticking up out of it. Also, there was a wet footprint on the door.

{¶11} Officer Baldrey testified that although appellant was cooperative at first, he became agitated. Officer Baldrey stated that appellant began to smash his head against the protective barrier of the police cruiser, kick the cruiser's windows, and make threatening comments.

{¶12} The jury found appellant guilty of aggravated burglary. Appellant was sentenced to a mandatory prison term of 11 years on Count 1. Additionally, following admission of a stipulation and certified copies of judgment entries, the trial court found appellant guilty of the Repeat Violent Offender Specification as to Count 1 and, therefore, found appellant to be a repeat violent offender under R.C. 2929.01(CC). Appellant was sentenced to an additional term of three years beyond the maximum term, pursuant to R.C. 2929.14(B)(2)(d), to be served consecutive to and prior to the above prison term, for a total of 14 years imprisonment.

{¶13} Appellant filed a timely notice of appeal. As his first assignment of error, appellant states:

{¶14} "The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court failed to give an accurate aggravated burglary instruction."

{¶15} Appellant maintains it was plain error for the trial court to give an incorrect aggravated burglary instruction to the jury. The relevant portion of the aggravated burglary statute states:

4

{¶16} "No person, by force * * * shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another." R.C. 2911.11(A)(1).

{¶17} The trial court instructed the jury as follows:

> Now, as to the specific charge. The Defendant is charged with Aggravated Burglary. Before you can find the Defendant guilty of this offense, you must find beyond a reasonable doubt that on or about January 14, 2012, in Lake County, Ohio, the Defendant, Craig A. Anthony, with purpose to commit a criminal offense, trespassed by force, stealth or deception, in an occupied structure when another person was present in that structure and the Defendant inflicted, attempted to inflict or threatened to inflict physical harm on Mariah McCraney and/or April March.

{¶18} Appellant concedes the trial court initially provided an accurate instruction of aggravated burglary to the jury. After providing the jury with the definitions for assault, menacing, and criminal damaging, the trial court then instructed the jury as follows:

> Now, the preceding definitions for Assault, Menacing, and Criminal Damaging set forth what is necessary to prove the commission of these offenses. It is not necessary that the State prove the commission of any of these offenses in order to prove the Defendant guilty of Aggravated Burglary. It is only necessary that the State prove the Defendant had the purpose to commit any one of these offenses.

{¶19} Appellant argues the subsequent jury instruction was error as it erroneously instructed the jury that if it found appellant had the purpose to commit *only* criminal damaging, i.e., damage to Ms. McCraney's cellular telephone, then he could be found guilty of aggravated burglary. Appellant claims the subsequent instruction negated the element of physical harm. We disagree.

5

{¶20} As appellant failed to object to the above instruction, we consider this matter under a plain-error analysis. Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under plain-error review, we will not reverse unless it is clear that, but for the error, the outcome would have been different. *State v. Bourn*, 8th Dist. Cuyahoga No. 92834, 2010-Ohio-1203, ¶18.

{¶21} "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten* (1973), 414 U.S. 141, 146-147. Here, a review of the entire jury instructions reveals the trial court did not err. The subsequent instruction was given immediately *after* the trial court's instruction to the jury that they had to find that appellant had the purpose to commit a criminal offense, not the actual commission of a criminal offense. The trial court then instructed the jury of the specific crimes—i.e., assault, menacing, and criminal damaging—and defined the elements of each.

{¶22} The trial court then continued its instruction by defining all of the other necessary, separate elements of aggravated burglary, including the definition of "physical harm to persons." The jury was properly instructed that the state had to prove appellant had a purpose to commit a criminal offense—assault, menacing, and/or criminal damaging—*and* that appellant inflicted, attempted to inflict, or threatened to inflict physical harm on Ms. McCraney and/or Ms. March.

{¶23} The trial court's general instructions could have been clearer in some respects, e.g., with regard to the criminal offense that related to the aggravated burglary. However, because the specific instruction regarding what the jury must find in

6

order to convict the defendant of aggravated burglary was correct, we cannot say any deficiency in the instruction affected the outcome. Appellant's first assignment of error is without merit.

{¶24} Appellant's second assignment of error states:

{¶25} "The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court admitted testimony of the other crimes, wrongs, or other acts allegedly committed by the defendant-appellant."

{¶26} Appellant argues it was improper to allow testimony of his post-arrest behavior as this evidence was not part of the "immediate background" of the crime charged or "inextricably related" to the crime charged. He contends that this testimony was impermissible "other acts" evidence in violation of Evid.R. 404(B).

{¶27} At trial, Officer Baldrey testified that although appellant was cooperative upon returning to his cruiser, appellant subsequently became violent. Officer Baldrey stated that appellant started smashing his head against the protective barrier of the police cruiser, kicking the cruiser's windows, and making threatening comments. Additionally, the jury heard a taped jail telephone conversation between appellant and his mother discussing his post-arrest behavior. Appellant claims this evidence was not relevant, as it was related to the towing of appellant's vehicle, not the alleged aggravated burglary.

{¶28} At the outset, we note that appellant did not object to Officer Baldrey's testimony at trial, and therefore, he has waived all but plain error with regard to this testimony. Appellant, however, did object to the admission of the taped jail conversation between appellant and his mother discussing his post-arrest behavior,

7

claiming the conversation did not pertain to any elements of the alleged crime. The trial court overruled counsel's objection, ruling that it was relevant. The trial court stated:

**{¶29}** "[I]t deals with the arrest from the incident at the scene of the crime immediately after this incident occurred. Goes to show his state of mind and the time we're talking about is again right after the arrest. Not hours later. The same exact night. Again right after he was apprehended."

**{¶30}** Appellant cites to the Fourth Appellate District's opinion in *State v. Stone*, 4th Dist. Scioto No. 11CA3462, 2013-Ohio-209, to support his argument that his post-arrest behavior was impermissible evidence under Evid.R. 404(B). In *Stone*, the court found the officer's testimony regarding Stone's behavior during the booking process to be inadmissible stating, "Stone's combative behavior with the police after his arrest does not form part of the immediate background and is not inextricably related to the charged crime of gross sexual imposition." *Id*. at ¶25. The court noted that the offense had already been committed, and his statements "did not implicate him in the crime or show consciousness of guilt." *Id*. Although the appellate court found this testimony in violation of Evid.R. 404(B), it determined there was substantial other evidence supporting the jury's guilty verdict, and any error in allowing the officer's testimony concerning Stone's post-arrest behavior was harmless. *Id*.

**{¶31}** We find no error in Officer Baldrey's testimony regarding appellant's post-arrest behavior or in the admission of the taped jail conversation between appellant and his mother recapping appellant's post-arrest behavior. Unlike *Stone*, appellant's behavior occurred immediately after his arrest; appellant was still at the scene of the incident. Moreover, unlike *Stone*, appellant's conduct was in response to Officer

8

Baldrey informing appellant of his charge—Officer Baldrey testified that once he told appellant his charge, he "turned in personality." Appellant then began smashing his head against the protective barrier and kicking the windows. The recorded jail telephone call corroborated Officer Baldrey's testimony. We therefore agree that appellant's reaction to Officer Baldrey's statement that he was being charged was relevant to appellant's state of mind. This evidence also rebuts appellant's theory propounded at trial—that both Ms. March and Ms. McCraney exaggerated appellant's behavior on the night in question.

{¶32} And, as we later discuss under appellant's fourth assignment of error, even without Officer Baldrey's testimony as to appellant's post-arrest behavior and the taped jail conversation, there was sufficient evidence to find appellant guilty of aggravated burglary.

{¶33} Appellant's second assignment of error is without merit.

{¶34} Appellant's third assignment of error states:

{¶35} "The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel."

{¶36} In reviewing a claim for ineffective assistance of counsel, in the context of a guilty plea, this court must determine whether counsel's performance was deficient and whether the defendant was prejudiced by the deficient performance. *State v. Madeline*, 11th Dist. Trumbull No. 2000-T-0156, 2002 Ohio App. LEXIS 1348, *9 (Mar. 22, 2002) (citations omitted). To demonstrate prejudice from counsel's deficient

9

performance, the defendant must prove there is a reasonable probability that, but for counsel's error, the defendant would not have pleaded guilty. *Id.* (citations omitted).

**{¶37}** Furthermore, decisions on strategy and trial tactics are generally granted a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland v. Washington*, 466 U.S. 668, 689. Debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995).

**{¶38}** First, appellant argues trial counsel was ineffective for rejecting the trial court's offer to provide a curative instruction to the jury. Specifically, when asked how she knows appellant, Ms. March replied: "Him and I met when we were about fourteen in the detention home." Immediately, the trial court requested counsel to approach, whereby they engaged in a conversation as to whether to provide the jury with a curative instruction. Appellant's counsel acknowledged the statement; however, he noted that he would "prefer not drawing any attention to it. Just impeach her as much as it does him if they both [were] in [the detention hall.]" The record demonstrates it was counsel's tactical decision not to request a curative instruction; we need not second guess counsel's decision at the appellate level. *See Strickland*, *supra*, at 689.

**{¶39}** Appellant then claims that defense counsel was ineffective for failing to move for a mistrial after Ms. March testified that she made a statement to appellant's parole officer. Appellant maintains this statement was inadmissible as evidence of appellant's prior conviction. After Ms. March made this statement, the trial court again asked counsel to approach the bench. The trial court then granted defense counsel's

10

request for a curative instruction. The trial court instructed the jury to disregard the last statement made by Ms. March as it was nonresponsive and, therefore, stricken from the record. "It is presumed that the jury will obey the trial court's instructions." *State v. Warren*, 9th Dist. Summit No. 16034, 1993 Ohio App. LEXIS 2685, *13-14 (May 26, 1993), citing *State v. Manor*, 9th Dist. Summit No. 14376, 1990 Ohio App. LEXIS 2182, *2 (May 30, 1990).

**{¶40}** Defense counsel apparently decided that it was appropriate to give the jury a curative instruction and then allow the empaneled jury to decide the case rather than "take another chance before an entirely different jury." *State v. Seiber*, 56 Ohio St.3d 4, 12 (1990). "Moreover, appellant did not establish that the judge probably would have or should have declared a mistrial." *Id.*

**{¶41}** Appellant further claims trial counsel was ineffective for failing to object to the "inaccurate aggravated burglary instruction." However, as we found in appellant's first assignment of error, the instructions provided to the jury were not erroneous. Additionally, appellant's claim that trial counsel was ineffective for failing to object to his post-arrest behavior is also without merit for the reasons discussed in the second assignment of error.

**{¶42}** Appellant's third assignment of error is without merit.

**{¶43}** Appellant's fourth assignment of error states:

**{¶44}** "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶45}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the

11

credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 (1967), paragraph one of the syllabus. Further, no conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal. *Thompkins* at 386.

{¶46} Here, we cannot conclude the jury lost its way in returning a verdict of guilty. Appellant maintains that Ms. McCraney's testimony that she received bruising on her back as a result of appellant pushing her into her dresser was contradicted by the police report stating that she did not have any injuries. However, when asked about this contradiction by defense counsel, Ms. McCraney testified that she did not show the officers her injuries because she was "more worried about [her] mother." Further, appellant argues it was Ms. McCraney who instigated the second encounter by preventing him from ascending the stairs. Again, Ms. McCraney admitted that she grabbed appellant, but explained that she did so in order to prevent him from going up the stairs where she knew her mother was located. We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21. Moreover, "[t]he trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean

12

through a printed record." *Id.*; *see also State v. Barnes*, 11th Dist. Portage No. 2012-P-0133, 2013-Ohio-2836, ¶49 ("we must defer to the weight and credibility the jury gave to the evidence in this case").

{¶47} Next, appellant argues the transcript is devoid of any suggestion that he threatened to inflict physical harm on any occupants of the house during the course of the trespass and that Ms. March's injuries were not a natural and foreseeable consequence of his conduct. This contention goes to the sufficiency of the evidence rather than the weight of the evidence. The test for determining the issue of sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶48} Here, the record demonstrates that appellant forcibly entered the home of Ms. March, whereupon she fled in fear upstairs. Upon entry, appellant and Ms. McCraney engaged in a struggle. Appellant then turned to go up the stairs in search of Ms. March; however, Ms. McCraney, out of fear for her mother, attempted to keep appellant downstairs. Ms. McCraney and appellant again struggled; Ms. McCraney suffered bruising and soreness. Despite the evidence of actual harm to Ms. McCraney, appellant spends the remainder of his argument contending that Ms. March could have employed "numerous safer methods" to exit her home. The jury, however, was instructed that appellant's "responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences or results that follow, in the ordinary course of

13

evidence, from the act or failure to act." Ms. March testified that earlier in the evening, appellant called her cellular phone and had threatened to "kill" her. Then, appellant arrived at her home uninvited, broke through her door and, after struggling with her daughter, attempted to find Ms. March, who was hiding upstairs. Ms. March was in fear of appellant and, in an attempt to escape, utilized the upstairs doorway leading to the flat roof as her means of escape. In her effort to escape, Ms. March suffered injuries. Certainly, based on these facts, one could conclude that there was sufficient evidence to support appellant's conviction.

{¶49} Appellant's fourth assignment of error is without merit.

{¶50} Based on the opinion of this court, the judgment of the Lake County Court of Common Pleas is hereby affirmed.

DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.

concur.

14