[Cite as *State v. Stallworth*, 2014-Ohio-4297.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-122** |
| WILLIAM O. STALLWORTH, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000218.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Laura A. DePledge*, DePledge Law Office, Inc., 7408 Center Street, Mentor, OH 44060 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} William O. Stallworth, Jr., appeals from the judgment entry of the Lake County Court of Common Pleas, entered on a jury verdict, sentencing him to a total of 66 months imprisonment for a series of crimes, principally relating to possession of a firearm, felony trespass, and misdemeanor assault. He contends his convictions relating to possession of a firearm, and felony trespass, are against the manifest weight of the evidence. He further contends he was unduly prejudiced when evidence was

introduced regarding several assaults he made on his girlfriend. Finding no merit in these contentions, we affirm.

{¶2} In the early morning hours of January 8, 2013, Mr. Stallworth was drinking heavily at the 306 Lounge in Mentor, Ohio, accompanied by his girlfriend, Sarah Wancho, and her friend, Melissa Miller Romeo. At a certain point, Mr. Stallworth and Ms. Wancho retired to the smoker's patio, and started fighting. Leonard Gales, another patron on the patio, saw Mr. Stallworth flash the butt end of a pistol, which was tucked either in a jacket pocket, or Mr. Stallworth's waistband. Mr. Stallworth pushed Ms. Wancho into some patio furniture. At trial, Mr. Gales could not positively identify Mr. Stallworth as the man he saw with the gun on the patio, but did testify he appeared similar.

{¶3} Mitchell Tenerove was at the 306 Lounge playing pool with his friend, Matt Maio. He saw Mr. Stallworth push Ms. Wancho down on the patio. He testified that after that, the couple came back in the bar, and exited out the front.

{¶4} Mr. Maio heard, but did not see, the fight on the patio. However, he testified that Mr. Stallworth and Ms. Wancho later had another fight in the bar, during which Mr. Stallworth knocked her down. He further testified he saw Mr. Stallworth knockout another patron, who was trying to diffuse the situation.

{¶5} John Estok was drinking and playing Keno at the 306 Lounge that evening. He saw Mr. Stallworth come in from the patio at one point, and start yelling that someone had stolen his gun. Mr. Estok testified that Mr. Stallworth threatened the other patrons of the bar unless his gun was returned. Mr. Estok also saw Mr. Stallworth hit Ms. Wancho in the bar, and knockout a man who tried to intervene.

2

{¶6} Joey MacDonald was the bartender that morning. She heard about the fight on the patio, and went outside, but was told by another patron the matter had calmed down. She went back into the bar. Sometime thereafter, Mr. Stallworth, whom she knew as BJ, came in from the patio, and started threatening the other patrons, demanding to know who had stolen his gun. Ms. MacDonald calmed him down. Ms. Wancho had come in from the parking lot, and demanded that Mr. Stallworth return the keys to her van. Mr. Stallworth replied by repeatedly demanding Ms. Wancho return his gun. Eventually, Ms. Wancho grabbed her keys back, and Mr. Stallworth threw her into a table. Ms. MacDonald called 911. She testified that another regular, Denny Richcreek, tried to calm the situation, and Mr. Stallworth responded by knocking him out.

{¶7} Mr. Richcreek testified he was trying to guide Mr. Stallworth out of the bar, having been told of the fight on the patio, and seen the assault of Ms. Wancho in the bar, when Mr. Stallworth knocked him out.

{¶8} Ms. Romeo is a friend of Ms. Wancho. She saw Mr. Stallworth throw Ms. Wancho into the furniture on the patio at the 306 Lounge. Ms. Romeo then went to the front parking lot, and made calls to other friends, to get a ride home. She was unsuccessful. Ms. Wancho came out front, and told Ms. Romeo to get into the van. Mr. Stallworth came out, took Ms. Wancho's keys from the ignition, and returned inside, Ms. Wancho following him.

{¶9} Ms. Romeo remained in the parking lot. Shortly thereafter, Ms. Wancho returned, and they started driving down St. Rte. 306. Police cars came streaming by, and Ms. Wancho called someone to warn the police were coming. She turned the van

3

around, and went to a gas station near the 306 Lounge, where Mr. Stallworth was waiting. He insisted they return to the bar to get his gun. Ms. Wancho did so, but police had closed the bar.

{¶10} The trio then drove south on St. Rte. 306. Mr. Stallworth and Ms. Wancho started fighting again, so she turned onto a side street, Hodgson Road, and stopped. Mr. Stallworth and Ms. Wancho got out of the van, and started hitting each other, so Ms. Romeo left, and started walking back to St. Rte. 306. She saw Mr. Stallworth and Ms. Wancho run between some houses, in the direction of the main road, so she returned to the van, to find the keys, and drive home. The keys were not in the van, but Ms. Romeo found Ms. Wancho's cell phone, which she took. Ms. Romeo then started back toward St. Rte. 306. She found Ms. Wancho at the corner of Hodgson and the main road, and returned the cell phone, but refused a plea to help look for Mr. Stallworth. Ms. Romeo walked along St. Rte. 306 in the direction of her home, until a state trooper picked her up and drove her.

{¶11} Brian Zak lives with his wife and two-year old son at 7305 Hodgson Road. Around 2:00 a.m. January 8, 2013, the baby had woken, and the Zaks were up trying to put him back to sleep. The dog started barking, and Mrs. Zak looked out the front window, and saw a couple arguing. Mr. Zak also looked out, and saw the couple as well, a black male, and a white female. They were standing outside a van. After a moment, the man ran between some houses on the other side of the street, followed by the woman. The man was wearing a jacket, and the woman was wearing a light colored jacket with a fur hood.

4

{¶12} The couple eventually returned, and continued arguing in front of the Zak residence. The man then headed west. The woman with whom he was arguing had been joined by a second woman. They also walked west; then returned, and headed back toward St. Rte. 306. The man did not return. Eventually, the woman in the hooded jacket returned to the van, and started talking on her cell phone. Police arrived and spoke with the woman. Eventually, a tow truck came and removed the van.

{¶13} Jerry Schemm lives at 7198 Taft Avenue, several houses away from the Zak residence, with his wife and teenage son. Shortly after 2:00 a.m., January 8, 2013, Mr. Schemm was awoken by his dog barking in the garage. Mr. Schemm went downstairs to calm the dog. He did not turn on the lights. On reaching the foyer heading to the garage, he heard the door of the bathroom located in the foyer shut. He assumed his wife had also gone downstairs to check on the dog, and had entered the bathroom.

{¶14} Having calmed the dog, Mr. Schemm went back inside, and looked out the front door to see if he could discover what had disturbed her. A police cruiser was parked in front of his house. Returning to the foyer, he was surprised to see the bathroom door still closed. He took a broom, and pushed the door open with its handle. Inside, he discovered a short, stocky black male with a cell phone. The only light was provided by the cell phone's face. Mr. Schemm testified the intruder was dressed in a black hooded sweatshirt, and smelled of alcohol. The intruder told Mr. Schemm the police were after him; that he was trying to contact a friend to pick him up; and, that he would give Mr. Schemm $150 for aid in escaping. Mr. Schemm yelled at the intruder to get out of the house, and started pushing him toward the front door with the broom. Mr.

5

Schemm could not get the intruder to exit by the front door: instead, the intruder said he would go out by the door he entered. The intruder headed back to the garage, and exited by another door.

{¶15} Though Mr. Stallworth is short and stocky, Mr. Schemm could not identify him at trial as the intruder. Further, Mr. Stallworth was wearing a dark winter jacket when he left the 306 Lounge, not a black hooded sweatshirt.

{¶16} Officer Brian Fekete was the driver of the police cruiser parked in front of the Schemm house on the morning of January 8, 2013. He had been ordered to respond to the area to look for Mr. Stallworth, as a result of the fight at the 306 Lounge. He testified that Mr. Stallworth was the only black male for whom the Mentor Police were looking that morning.

{¶17} March 18, 2013, the Lake County Grand Jury returned an indictment in six counts against Mr. Stallworth: Count 1, illegal possession of a firearm in liquor permit premises, a fifth degree felony in violation of R.C. 2923.121; Count 2, having weapons while under disability, a third degree felony in violation of R.C. 2923.13(A)(3); Count 3, assault, a first degree misdemeanor in violation of R.C. 2903.13(A); Count 4, trespass in a habitation when a person is present or likely to be present, a fourth degree felony in violation of R.C. 2911.12(B); Count 5, obstructing official business, a second degree misdemeanor in violation of R.C. 2921.31; and, Count 6, having weapons while under disability, a third degree felony in violation of R.C. 2923.13(A)(2). September 5, 2013, Mr. Stallworth was arraigned and pleaded not guilty to all charges. Discovery practice ensued.

{¶18}  The matter came on for trial October 15, 2013; the jury returned a verdict of guilty on all counts October 18, 2013.

{¶19}  Sentencing hearing was held October 25, 2013.  The trial court merged the two counts for having weapons while under disability for sentencing purposes.  It sentenced Mr. Stallworth to 12 months imprisonment for possessing a firearm in liquor permit premises; 36 months for having weapons while under disability; and, 18 months for trespass in a habitation when a person is present or likely to be present.  The terms run consecutively.  The trial court further sentenced Mr. Stallworth to 180 days imprisonment for assault, and 90 days for obstructing official business, the terms running concurrently with each other and with the felony sentences.

{¶20}  This appeal timely followed, Mr. Stallworth assigning three errors.  The first reads: "The trial court erred when it found that defendant was in possession of a firearm and said finding was against the manifest weight of the evidence."  In support of this assignment of error, Mr. Stallworth notes that Mr. Gales, the only person claiming to see a gun at the 306 Lounge, could not positively identify Mr. Stallworth as the possessor.  He further points out he made no direct threats to shoot anyone at the 306 Lounge.  He admits to being drunk at the time, and implies his statements about losing a gun were a result of his intoxication.

{¶21}  As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶22}  "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

7

{¶23} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)

{¶24} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist.1983). Further, we note the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶25} Applying these standards, we cannot find the jury lost its way in convicting Mr. Stallworth of all the firearm related charges. Admittedly, Mr. Gales could not positively identify Mr. Stallworth as the person he saw with a gun – but other witnesses, and a DVD made from security video at the bar, established Mr. Stallworth was the person who pushed Ms. Wancho on the patio, and that was the person Mr. Gales said had the gun. Mr. Estok and Ms. MacDonald both testified that during Mr. Stallworth's rampage through the bar during which he committed another assault on Ms. Wancho, and the assault on Mr. Richcreek, he was yelling that his gun had been stolen, and he wanted it back. Ms. Romeo testified Mr. Stallworth wanted to return to the bar to get his gun, when she and Ms. Wancho picked him up at the gas station after the brawl. The jury could infer Mr. Stallworth had a gun when he entered the 306 Lounge that night.

8

{¶26} The first assignment of error lacks merit.

{¶27} The second assignment of error reads: "The trial court erred when it found that defendant trespassed in a habitation and said finding was against the manifest weight of the evidence." Mr. Stallworth observes that Mr. Schemm could not identify him as the intruder at trial. He emphasizes that Mr. Schemm testified the intruder wore a black hooded sweatshirt, and that he wore a dark winter jacket.

{¶28} Again, we disagree that the jury lost its way regarding the trespass charge. The photographs and pictures in evidence do indicate Mr. Stallworth was wearing a dark jacket, without a hood. However, the only light in the bathroom where Mr. Schemm discovered the intruder was provided by the latter's cell phone, and Mr. Schemm might be excused for not looking too closely at the intruder's dress. The intruder offered to give Mr. Schemm $150 to help him escape from the police. Through Ms. Romeo's testimony, it was established that Mr. Stallworth knew the police were looking for him. Officer Fekete parked his cruiser in front of the Schemm house because the police specifically thought Mr. Stallworth was in the area. Officer Fekete testified Mr. Stallworth was the only black male for whom the Mentor Police were searching that morning, and the intruder in the Schemm house was a short, stocky black male – like Mr. Stallworth.

{¶29} The second assignment of error lacks merit.

{¶30} The third assignment of error reads: "The trial court erred when it denied defendant's repeated requests to exclude prejudicial evidence of arguments between defendant and his girlfriend that said evidence was not probative of the matter before the court." Mr. Stallworth argues the trial court violated Evid.R. 403(A) by allowing the

9

state to introduce evidence regarding his assaults on Ms. Wancho.[1]  He notes he was not charged with any crime for these assaults, and argues the evidence – consisting of testimony, the DVD of the surveillance video, and still photos derived from the video – unfairly prejudiced him, improperly causing the jury to punish him for these uncharged crimes.  The state counters that the evidence relating to the assaults on Ms. Wancho was not *unfairly* prejudicial as required for exclusion under Evid.R. 403(A).  It further argues it was properly admissible under Evid.R. 404(B).

**{¶31}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."  *State v. Sage*, 31 Ohio St.3d 173, paragraph two of the syllabus (1987).  Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.  *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).  An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."  *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶32}** "Evid.R. 401 states: '"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'

**{¶33}** "Evid.R. 402 provides: 'All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.  Evidence which is not relevant is not admissible.'

---

1. Defense counsel made a standing objection to all of this evidence.

10

**{¶34}** "Evid.R. 403(A) states: 'Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶52-54.

**{¶35}** Evid R. 404(B) provides, in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶36}** We respectfully disagree with the state that Evid.R. 404(B) applies to this case.

**{¶37}** "Evid.R. 404(B) applies initially to limit the admission of other acts evidence that is 'extrinsic' to the crime charged.  *See Jordan v. Dayton Testing Lab., Inc.*, 2d Dist. Montgomery No. 19741, 2004-Ohio-2425, ¶48 (Ohio courts have held that Evid.R. 404(B) only excludes extrinsic evidence).  Accordingly, acts intrinsic to the alleged crime do not fall under Evid.R. 404(B)'s limitation on admissible evidence." *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶46 (Cannon, P.J., concurring in part and concurring in judgment only in part).

**{¶38}** "When other acts are 'inextricably intertwined' with [an] offense, those acts are said to be intrinsic to the alleged crime.  In other words, acts that are 'inextricably intertwined' aid understanding by 'complet(ing) the story of the crime on trial.'  *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir.2008).  'Evidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime

11

on trial as the proof of one crime incidentally involves the other crime, *or explains the circumstances*, or tends logically to prove any element of the crime charged.' *State v. Long*, 64 Ohio App.3d 615, 617, * * * (9th Dist.1989)." (Emphasis added.) (Parallel citation omitted.) *Id.* at ¶47.

{¶39} In this case, prior to jury selection, the trial court indicated it would allow in evidence regarding the assaults on Ms. Wancho pursuant to Evid.R. 404(B). After considerable testimony, and immediately following that of the bartender, Joey MacDonald, defense counsel renewed his objection to any evidence regarding these assaults, during a sidebar. At that point, the learned trial court indicated the evidence would come in as inextricably intertwined with the crimes charged. We agree.

{¶40} The balance of the crimes charged occurred as part of a bar fight initiated by Mr. Stallworth. Naturally, most of the other witnesses only saw or heard part of what occurred. Thus (for instance), without the DVD of the bar's security videos, it would be extremely difficult for the jury to grasp the sequence of events. The DVD shows that Mr. Stallworth left his jacket on the patio after his initial assault on Ms. Wancho, to pursue her to her van in the parking lot. It further reveals that when they re-entered the bar, they went to retrieve his jacket on the patio.[2] It was after this that Mr. Stallworth stormed back into the bar, and began confronting people. This is when he began insisting his gun had been stolen, according to testimony. Further, his assault on Ms. Wancho inside the bar was due to his belief she had stolen the gun, according to the testimony of Ms. MacDonald, the bartender. The evidence of the assaults on Ms. Wancho explains the circumstances under which the firearm related charges occurred, as well as the assault on Mr. Richcreek.

---

2. The DVD indicates Mr. Stallworth pushed Ms. Wancho again when they were getting his jacket.

{¶41} The evidence of the assaults on Ms. Wancho was relevant and probative. Thus, under Evid.R. 403(A), it could only be excluded for causing unfair prejudice, confusion of the issues, or misleading the jury. This evidence *clarified* the issues, and provided guidance to the jury with how the events occurred. "With regard to the risk of prejudice, it must be shown that the prejudicial effect was unfair because it might have provided the jury with an improper basis for rendering its decision." *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 Ohio App. LEXIS 3670, *30 (Aug. 15, 1997). Mr. Stallworth's contention is the evidence of his assaults on Ms. Wancho inflamed the jury's passions, causing them to convict him of allegedly unproven crimes. We disagree. The trial court gave a curative instruction, which the jury presumably followed. *See, e.g.*, *State v. Anthony*, 11th Dist. Lake No. 2013-L-021, 2013-Ohio-5652, ¶39. More significantly, this evidence helped establish a *proper* basis for the firearm charges and assault charge for which Mr. Stallworth was actually convicted.

{¶42} The third assignment of error lacks merit.

{¶43} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

13