[Cite as *State v. Wainscott*, 2016-Ohio-1153.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-07-056 |
| | : | O P I N I O N<br>3/21/2016 |
| - vs - | : | |
| | : | |
| ANTHONY M. WAINSCOTT, SR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2014-CR-0142

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Joshua R. Crousey, One East Main Street, Amelia, Ohio 45102, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Anthony M. Wainscott, Sr., appeals from his conviction in the Clermont County Court of Common Pleas for three counts of child endangering. For the reasons outlined below, we affirm.

{¶ 2} This case involves allegations against Wainscott in regards to unwarranted discipline utilized on three minor boys, four-year-old B.F., eight-year-old A.B., and 15-year-old A.W., who Wainscott and his then live-in girlfriend, A.R., resided with between January 2013

and October 25, 2013. It is undisputed that A.R. is the custodial parent of B.F. and is A.B.'s biological mother. It is likewise undisputed that Wainscott is A.W.'s biological father. Besides residing together, A.R. is not related to A.W., nor is Wainscott related to B.F. or A.B. A.R.'s other children, ten-year-old H.B., seven-year-old B.B., and two-year-old P.W., also resided in the home during this time. Wainscott is the biological father of P.W.

{¶ 3} On March 6, 2014, the Clermont County Grand Jury returned an indictment charging Wainscott with three counts of child endangering in violation of R.C. 2919.22(B)(2), all third-degree felonies.[1] Pursuant to that statute, no person shall "torture or cruelly abuse" a child under 18 years of age. In regards to each of these three charges, the indictment stated the following:

> * * * **ANTHONY MICHAEL WAINSCOTT, SR.,** on or about January, 2013, through the 25th day of October, 2013, in Clermont County, Ohio, did to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, torture or cruelly abuse the child, contrary to and in violation of section 2919.22(B)(2) of the Revised Code of Ohio, a felony of the third degree, and against the peace and dignity of the State of Ohio.

{¶ 4} On March 25, 2014, Wainscott filed a demand for discovery and request for a bill of particulars, to which the state responded on April 3, 2014. According to the bill of particulars, the three charges stemmed from the following alleged conduct:

> **COUNT #[1] ENDANGERING CHILDREN:**
> Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. *Specifically, the defendant utilized unwarranted discipline on B.F. [D.O.B. 12/1/2008], by forcing B.F. to stand in a corner for seven to fifteen hours a day. If B.F. left the corner, he was beaten. This*

---

1. Wainscott was also charged with three counts of child endangering in violation of R.C. 2919.22(B)(4). However, those charges were later dismissed.

*was observed by several of the other children in the house. In addition, the defendant forced B.F. to sleep on the kitchen floor.*

**COUNT #[2] ENDANGERING CHILDREN:**
Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. *Specifically, the defendant utilized unwarranted discipline on A.B. [age 8], by forcing A.B. to stand in a corner for seven to fifteen hours a day. A.B. would attend school tired and hungry from lack of sleep from standing for such lengthy periods. Additionally, A.B. would sustain beatings if he were ever to leave the kitchen corner as well.*

**COUNT #[3] ENDANGERING CHILDREN:**
Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. *Specifically, the defendant utilized unwarranted discipline on A.W. [age 15], by forcing A.W. to stand in a corner for seven to fifteen hours a day.*

(Emphasis added.)

At the state's request, the matter was then twice continued and Wainscott agreed to waive his speedy trial rights.

{¶ 5} On March 30, 2015, the state filed a notice of its intent to use so-called "other acts" evidence at trial in accordance with Evid.R. 404(B). This proposed evidence included testimony that Wainscott had admittedly (1) punched holes in the walls of the house, (2) threatened to burn down the house after pouring gasoline down the hallway, (3) called A.R. derogatory names and otherwise degraded her, and (4) broke a car windshield, all within the presence and general vicinity of the children. According to the state, this evidence was admissible at trial because it illustrated Wainscott's intent and proved that his conduct was

not merely an accident.

{¶ 6} On April 10, 2015, after holding a hearing on the matter, the trial court issued a decision precluding the state from introducing any of the purported "other acts" evidence at trial. In so holding, the trial court found "the proposed other acts evidence [is] not relevant to the charges" and is "markedly different" than the underlying conduct set forth in the bill of particulars. The trial court also found that, pursuant to Evid.R. 403(A), "even if the other acts evidence could be relevant to these counts, any probative value is substantially outweighed by the danger of confusion of the issues and of misleading the jury." Nevertheless, because the trial court construed the state's notice as a motion in limine, the trial court noted that it was "at liberty to change its ruling on [the] disputed evidence in the actual context at trial."

{¶ 7} On April 14, 2015, a mere four days after the trial court issued its decision, the state filed a motion to amend the bill of particulars pursuant to Crim.R. 7(E) to include allegations regarding the same previously characterized "other acts" evidence. Specifically, the state requested to amend the bill of particulars as follows:

> **COUNT #[1] ENDANGERING CHILDREN:**
> Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. Specifically, the defendant utilized unwarranted discipline on B.F. [D.O.B. 12/1/2008], by forcing B.F. to stand in a corner for seven to fifteen hours a day. If B.F. left the corner, he was beaten. This was observed by several of the other children in the house. In addition, the defendant forced B.F. to sleep on the kitchen floor. *B.F. was also witness to the defendant punching holes in the walls, threatening his mother, breaking a car window, and dousing the interior of the residence with gasoline and threatening to light it on fire.*
>
> **COUNT #[2] ENDANGERING CHILDREN:**
> Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio

intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. Specifically, the defendant utilized unwarranted discipline on A.B. [age 8], by forcing A.B. to stand in a corner for seven to fifteen hours a day. A.B. would attend school tired and hungry from lack of sleep from standing for such lengthy periods. Additionally, A.B. would sustain beatings if he were ever to leave the kitchen corner as well. *A.B. was also witness to the defendant punching holes in the walls, threatening his mother, breaking a car window, and dousing the interior of the residence with gasoline and threatening to light it on fire.*

**COUNT #[3] ENDANGERING CHILDREN:**
Now comes Scott C. O'Reilly, Assistant Prosecuting Attorney, and states that in the above-captioned case, the State of Ohio intends to present evidence to show, in addition to the facts alleged in the indictment that the defendant, on or about January 2013, through the 25th day of October, 2013; at 2780 Lindale Mt. Holly #12; Clermont County, Ohio; did to a child under eighteen years of age, torture or cruelly abuse the child. Specifically, the defendant utilized unwarranted discipline on A.W. [age 15], by forcing A.W. to stand in a corner for seven to fifteen hours a day. *A.W. was also witness to the defendant punching holes in the walls, threatening [A.R.], and dousing the interior of the residence with gasoline and threatening to light it on fire.*

(Emphasis added.)

{¶ 8} On April 17, 2015, the trial court held a hearing on the matter, issuing a decision from the bench denying the state's motion to amend the bill of particulars. In reaching this decision, the trial court stated, in pertinent part, the following:

I will say candidly it's somewhat disconcerting that this is filed on April 14th about two weeks before trial when allegedly it's been known for more than a year, and it – it's disconcerting. It's also disconcerting the manner in which it was filed and that it was – we had a hearing on this and I assumed the State was proceeding in good faith with indicating that this was other acts[.]

The trial court's decision to deny the state's motion was then incorporated into an entry filed on April 21, 2015.

{¶ 9} On May 1, 2015, three days before the jury trial was scheduled to begin, the

- 5 -

parties reconvened for purposes of conducting a videotaped deposition of the state's expert witness, Dr. Brooks Keeshin, who had since moved out of state. As part of this deposition, the state requested permission to illicit testimony from Dr. Keeshin regarding the impact that the previously characterized "other acts" evidence had on B.F., A.B., and A.W., if any. In support of this claim, the state argued that it had "established a foundation that connects these other acts *to the indictment as charged*. And at this point, we would like to ask the doctor about some of those issues related to the holes in the wall, the pouring of the gasoline, and busting of the windows." (Emphasis added.) Wainscott objected, noting that these issues were not included in bill of particulars, and had since been denied inclusion when the state attempted to amend the bill of particulars. Wainscott also noted the following:

> You know, the defense is being asked to defend against these allegations that were in the original Bill of Particulars. Some of these items that are now being asked to be admitted are items that it could take a matter of months trying to come up with witnesses trying to come up with documentation. I don't know whatever evidence we might seek out to try to defend against those issues. So, I think here again at this late hour it's unfair to ask the defense to have to defend that.

{¶ 10} After considering both parties' arguments, the trial court granted the state's request and permitted the state to introduce evidence regarding the previously characterized "other acts" evidence. The trial court then stated that it would also not give a limiting instruction to the jury since "I don't believe these are other acts now." Specifically, the trial court stated:

> I believe these are part and parcel of the total underlying course of maltreatment of the child that would clearly fall under cruelly abuse, torture or cruelly abuse. So, I don't believe these are other acts. *I believe these are part and parcel now of what would be appropriate and relevant for the State to prove that Mr. Wainscott cruelly abused the child. So, I don't believe there's any need for an other acts. This is just an other act on his part.* I mean it's – yeah. I don't believe I need another other acts instruction on that piece because now based on Dr. Keeshin's testimony and the exhibits that's been presented this is evidence,

I think, that is relevant to establishing whether Mr. Wainscott terrorized the child and that's part of the doctor's expert testimony of maltreatment, psychological maltreatment and truly cruelly abuse, as I indicated in my decision, can be not only physical but, can be mental and emotional. So, we can start with Dr. Keeshin's testimony that had been proffered, it can now be presented to the jury.

(Emphasis added.)

{¶ 11} The state then proceeded to ask Dr. Keeshin about the prior incidents and the impact the incidents may have had on the three boys. According to Dr. Keeshin, these prior incidents evidenced the "chronic exposure to really terrorizing acts" that established severe and significant "psychological maltreatment" to B.F., A.B., and A.W. Dr. Keeshin further testified that being exposed to these "terrorizing" incidents contributed to the three boys exhibiting symptoms of post-traumatic stress disorder.

{¶ 12} A four-day jury trial was then held between May 4 and May 7, 2015, during which time the jury heard extensive testimony from, among others, A.R., A.B., A.W., H.B., and Wainscott himself. As part of this testimony, Wainscott admitted to ordering B.F., A.B., and A.W. to stand in the corner with their hands behind their back for periods of up to seven hours a day. Wainscott also admitted that he would "spank" the boys with his hand or with a belt if they moved from that position, and that he had forced B.F. to sleep on the kitchen floor after he urinated in his bedroom. Wainscott further admitted to punching a hole in the wall, breaking a glass table, and pouring gasoline in the house while A.R. and the other children were inside. Wainscott similarly admitted to calling A.R. derogatory names such as a "cum guzzling gutter slut," slapping A.R. in the back of the head, and cracking a car windshield, all within the presence and general vicinity of the children. The state also introduced evidence that the three boys, particularly B.F. and A.B., were fearful of Wainscott and that being subject to his repeated punishments, which were referred to as "corners" and "whoopings," made them upset and sad.

- 7 -

{¶ 13} After both parties rested, the jury issued a decision finding Wainscott guilty as charged. The trial court then sentenced Wainscott to a total period of eight years in prison. Wainscott now appeals from his conviction, raising three assignments of error for review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING EVIDENCE OF "OTHER ACTS" AS SUBSTANTIVE EVIDENCE.

{¶ 16} In his first assignment of error, Wainscott argues the trial court erred by permitting the state to introduce the previously characterized "other acts" evidence that the trial court later considered "part and parcel of the total underlying course of maltreatment" when these prior incidents were not referenced in the indictment or bill of particulars and had previously been found inadmissible under both Evid.R. 404(B) and 403(A).

{¶ 17} A trial court has broad discretion in the admission and exclusion of evidence. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. In turn, a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129-130. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 18} Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 40. In turn, pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, however, is permitted for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22.

{¶ 19} That being said, Evid.R. 404(B) only applies to limit the admission of so-called "other acts" evidence that is "extrinsic" to the crime charged. *State v. Stallworth*, 11th Dist. Lake No. 2013-L-122, 2014-Ohio-4297, ¶ 37. In other words, "Evid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events in question or form part of the immediate background of the alleged act which forms the basis for the crime charged." *State v. Crew*, 2d Dist. Clark No. 2009 CA 45, 2010-Ohio-3110, ¶ 99. Thus, "evidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged." *State v. Davis*, 64 Ohio App.3d 334, 341 (12th Dist.1989), citing *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980); *State v. Long*, 64 Ohio App.3d 615, 617 (9th Dist.1989).

{¶ 20} In this case, although the previously characterized "other acts" evidence was not referenced in the indictment or bill of particulars, was denied inclusion in the state's attempt to amend the bill of particulars, and had been found inadmissible under both Evid.R. 404(B) and 403(A), the trial court nevertheless determined, a mere three days before trial was set to begin, that such evidence was actually "part and parcel of the total underlying course of maltreatment." Although we may agree that such evidence was relevant to prove whether Wainscott tortured or cruelly abused B.F., A.B., and A.W. as alleged in the

- 9 -

*indictment*, the trial court's decision to permit the state to introduce this evidence at trial ignores the general principles and purposes behind a bill of particulars, which is "'to clarify the allegations in the indictment so that the accused may know with what he is charged in order to prepare his defense.'" *State v. Shirley*, 12th Dist. Butler No. CA2012-07-127, 2013-Ohio-1948, ¶ 20, quoting *Foutty v. Maxwell*, 174 Ohio St. 35, 38 (1962); *see also State v. Sellards*, 17 Ohio St.3d 169, 171 (1985) (purpose of a bill of particulars is to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense").

{¶ 21} Pursuant to Crim.R. 7(E), upon written request from the defendant, the state shall furnish a bill of particulars to the defendant that sets forth "specifically the nature of the offense charged and the conduct of the defendant alleged to constitute the offense." A bill of particulars, however, is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. *State v. Ray*, 12th Dist. Brown No. CA2009-06-022, 2010-Ohio-2434, ¶ 13. Nevertheless, as this court has stated previously, upon supplying the defendant with such a bill, the state "should be restricted in its proof to the indictment and the particulars as set forth in the bill." *State v. Fairbanks*, 172 Ohio App.3d 766, 2007-Ohio-4117, ¶ 22 (12th Dist.), citing *State v. Miller*, 63 Ohio App.3d 479, 485-486 (12th Dist.1989). Yet, even then, a bill of particulars "may be amended at any time subject to such conditions as justice requires." Crim.R. 7(E).

{¶ 22} Here, while the state attempted to amend the bill of particulars to include reference to such evidence at trial, the trial court denied the state's motion finding it was "disconcerting" that the motion was filed "two weeks before trial when allegedly it's been known for more than a year," as well as the "manner in which it was filed" since "we had a hearing on this and I assumed the State was proceeding in good faith with indicating that this was other acts[.]" Therefore, after a thorough review of the record, and because the trial court denied the state's motion to amend the bill of particulars, we find the state should have

been restricted in its proof to the nature of the offenses charged as set forth in the indictment and bill of particulars; namely, that between January 1, 2013 and October 25, 2013, while at 2780 Lindale Mt. Holly #12, Clermont County, Ohio, Wainscott tortured or cruelly abused four-year-old B.F., eight-year-old A.B., and 15-year-old A.W., utilizing unwarranted discipline by forcing the three boys to "stand in a corner for seven to fifteen hours a day," subjecting them to beatings if they ever left the corner, and by forcing B.F. "to sleep on the kitchen floor."

{¶ 23} Although we find the trial court erred by allowing the state to introduce the once characterized "other acts" evidence at trial, due to the overwhelming evidence of Wainscott's guilt, as well as the lack of any resulting prejudice, we find such error to be harmless. As this court has noted previously, an accused has "'a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error.'" *State v. Swartsell*, 12th Dist. Butler No. CA2002-06-151, 2003-Ohio-4450, ¶ 31, quoting *State v. Brown*, 65 Ohio St.3d 483, 485 (1992). Thus, pursuant to Crim.R. 52(A), any error, defect, irregularity or variance that does not affect the accused's substantial rights shall be disregarded as harmless error. *State v. MaCausland*, 12th Dist. Butler No. CA2007-10-254, 2008-Ohio-5660, ¶ 25. "A finding of harmless error is appropriate where there is 'overwhelming evidence of guilt' or 'some other indicia that the error did not contribute to the conviction.'" *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 46, quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn. 5.

{¶ 24} As noted above, Wainscott was convicted of three counts of child endangering in violation of R.C. 2919.22(B)(2), which provides that no person shall "torture or cruelly abuse" a child under 18 years of age. "The statute under review does not define the terms 'torture' or 'cruelly abuse.'" *State v. Nivert*, 9th Dist. Summit No. C.A. Nos. 16806, 1995 WL 608415, *2 (Oct. 18, 1995). However, the word "torture" as used in that section has been

- 11 -

defined as "the infliction of severe pain or suffering (of body or mind)," with the word "abuse" being defined as "ill-use, maltreat; to injure, wrong or hurt." *State v. Surles*, 9th Dist. Summit No. 23345, 2007-Ohio-6050, ¶ 5. Moreover, to treat someone "cruelly" means to "demonstrate indifference to or delight in another's suffering," as well as to treat that person "severely, rigorously, or sharply." *State v. Brown*, 9th Dist. Summit No. 23737, 2008-Ohio-2956, ¶ 12.

{¶ 25} Recklessness is the culpable mental state required for child endangering under R.C. 2919.22(B)(2). *State v. Ossege*, 12th Dist. Clermont Nos. CA2013-11-086 and CA2013-11-087, 2014-Ohio-3186, ¶ 55; *State v. Adams*, 62 Ohio St.2d 151 (1980), paragraph one of the syllabus. Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." In addition, under that same section, "a person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 26} At trial, A.B., who had since turned ten years old, testified Wainscott often forced him to stand in the corner with his hands behind his back for "a long time" as punishment when he misbehaved or if he accidentally wet himself. A.B. also testified that he would then "get whooped" with a belt and ordered "get back in the corner longer" if he ever turned around, talked to any of his brothers or sisters, wet himself again, or fell asleep. When asked how long he had to stand in the corner, A.B. testified that he had been forced to stand in the corner "from the time I get up, and then after school," which made him tired and impacted his ability to do his schoolwork. A.B. further testified that "a lot" of the time Wainscott forced him to stand in the corner all weekend, and that a typical Saturday

- 12 -

consisted of him standing in the corner from the time he got up until the time he went to bed. A.B. testified the same was true for B.F. and A.W., but that B.F. was actually forced to stand in the corner the most.

{¶ 27} H.B., the then 12-year-old sister of A.B., testified that living in the house with Wainscott was "crazy" due to "[a] lot of punishment and stuff." Continuing, H.B. testified she saw Wainscott force B.F., A.B., and A.W. to stand in the corner with their hands behind their backs staring at the wall. Specifically, as it relates to B.F., H.B. testified Wainscott had forced B.F. to sleep on the kitchen floor and stand in the corner, sometimes for the entire day and into the night. H.B. also testified Wainscott hit B.F. with a belt, which made her scared "[b]ecause [B.F.] was young, and I know it would have hurt [him]." H.B. further testified Wainscott forced A.B. to stand in the corner and that A.B. would spend most of his weekends standing in the corner, with A.W. at one time having to stand in the corner "for three days because he got a detention or something." When asked if she ever saw the three boys have difficulties standing in the corner for such long periods of time, H.B. testified "[y]eah, if they were tired they would fall over."

{¶ 28} A.W., who was then 16 years old, also testified that Wainscott had forced him to stand in the corner when he got in trouble for "not doing my work, or getting bad grades and not listening," with evidence indicating A.W. at one time had stood in the corner for a period of 13 hours. A.W. then testified Wainscott "whooped" him and forced him to get back in the corner when he tried to sit down, and that he was "spanked" when he tried to sneak out of the house. A.W. further testified Wainscott "sometimes" forced B.F. to sleep on the kitchen floor, and that both B.F. and A.B. had wet themselves after being forced to stand in the corner for such long periods of time. According to A.W., when this happened "[t]hey sometimes get whooped or stand in the corner longer."

{¶ 29} A.R., the custodial parent of B.F., A.B.'s biological mother, and Wainscott's

- 13 -

former live-in girlfriend, also testified that Wainscott would punish B.F., A.B., and A.W. by forcing them to stand in the corner with their hands behind their backs for multiple hours a day, sometimes from "the time they got up to the time they went to bed." A.R. then testified that if any of the boys moved from that position that they would be "more in trouble" and "would have to stand even longer," which was oftentimes accompanied by being "hit," "swatted" or "whipped" with a belt. A.R. further testified B.F. was once forced to sleep on the kitchen floor after he urinated in his bedroom. According to A.R., the punishments levied against B.F., A.B., and A.W., were not reasonable and lasted "way too long." However, when asked why she did nothing to stop Wainscott from issuing these punishments, A.R. testified "[b]ecause I was – I was scared too."

{¶ 30} Wainscott also testified and confirmed that he punished B.F., A.B., and A.W. by forcing them to stand in the corner for upwards of seven hours a day. However, when asked about the longest time any of the three boys stood in the corner, Wainscott testified "I can't really – I don't really remember exactly. I know it was some lengthy, like seven hours. I think, is pretty long." Wainscott then testified that he did not think this form of punishment was excessive because he "would rather have the time out and have them stand in the corner than have to, you know, spank them." Yet, even then, Wainscott acknowledged that he would "spank" and "sometimes" even "whoop" the boys with his hand or with a belt, but that he "didn't beat them or anything." Wainscott further admitted to making B.F. sleep on the kitchen floor for "a couple of nights" after B.F. urinated in his bedroom.

{¶ 31} Dr. Keeshin's videotaped deposition was also played for the jury. As part of his deposition, Dr. Keeshin testified that forcing a child to stand in the corner for upwards of seven hours a day would never be an appropriate form of punishment, and that he would question any child being placed in a "time out" for "more than 15, 20 minutes in length because that's really outside of the normal (sic) of what we normally think about." Dr.

Keeshin further testified that placing a child in a corner for multiple hours a day would "meet criteria for a clear component of psychological maltreatment," with chronic exposure to such confinement falling into "truly cruel punishment techniques" due to the time of the punishment and significant pain that would result, thereby increasing "the risk of emotional, developmental and behavior impacts on that child."

{¶ 32} After a thorough review of the record, we find this evidence, standing alone, constitutes overwhelming evidence of Wainscott's guilt for three counts of child endangering in violation of R.C. 2919.22(B)(2). Therefore, the trial court's decision permitting the state to introduce the previously characterized "other acts" evidence that the trial court later considered "part and parcel of the total underlying course of maltreatment" when these prior incidents were not referenced in the indictment or bill of particulars and had been found inadmissible under both Evid.R. 404(B) and 403(A), constitutes, at worst, harmless error. In so holding, we note that Wainscott generally admitted to all of the previously characterized "other acts" evidence at trial, and was otherwise permitted to cross-examine each witness at length regarding these prior incidents, thereby eliminating any prejudice that may have otherwise occurred. Accordingly, Wainscott's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED BY DENYING ACCESS TO EVIDENCE FAVORABLE TO APPELLANT.

{¶ 35} In his second assignment of error, Wainscott argues the trial court erred by denying him access to material evidence that was allegedly withheld by the state contrary to the United States Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). We disagree.

{¶ 36} In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where

- 15 -

the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[2] *Id.* at 87. However, as a rule, "undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 49. Rather, undisclosed evidence withheld by the state is "material" only if "there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 27, citing *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. McKelton*, 12th Dist. Butler No. CA2015-02-028, 2015-Ohio-4228, ¶ 16. "If, however, the evidence that was allegedly withheld is merely cumulative to evidence presented at trial, no violation occurs." *State v. Aldridge*, 120 Ohio App.3d 122, 145 (2d Dist.1997).

{¶ 37} Wainscott argues the trial court erred by denying him access to a videotape allegedly withheld by the state showing his positive interaction with B.F., A.B., and A.W. when he was accidentally provided visitation time with the three boys by Clermont County Children's Protective Services. According to Wainscott, such evidence was material because it showed the "congenial nature" of the visit and demonstrated the three boys were not afraid of him and "enjoyed their interactions with him." However, based on the overwhelming evidence of Wainscott's guilt, we find this evidence falls well short of that needed to be considered "material" as there is simply no reasonable probability that the result of the trial would have been different had the videotape been disclosed to him.

{¶ 38} We also find this evidence would merely be cumulative to the evidence presented at trial considering both Wainscott's mother and neighbor testified B.F., A.B., and

---

2. The holding in *Brady* has since been extended to include evidence affecting a state witness's credibility. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763 (1972).

A.W. got along "fine" with Wainscott, that Wainscott interacted with the three boys "real well," that the boys never acted afraid of Wainscott, and that they had a good relationship with Wainscott and loved him. Wainscott himself even testified that he had a "pretty good" relationship with B.F., A.B., and A.W., that they were always happy to see him, and that they never acted afraid of him. Therefore, because the videotape was not "material" evidence, and was otherwise merely cumulative to the evidence presented at trial, Wainscott's second assignment of error is overruled.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT DISMISSING PURSUANT TO RULE 29.

{¶ 41} In his third assignment of error, Wainscott argues the trial court erred by denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence to support his conviction for three counts of child endangering. However, as discussed more fully above, we find there was overwhelming evidence of Wainscott's guilt. Moreover, Wainscott's claim that the indictment was defective because it failed to charge a mens rea element of the crime lacks merit in light of the Ohio Supreme Court's decision in *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830. Therefore, Wainscott's third assignment of error is overruled.

{¶ 42} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.