[Cite as *State v. Smith*, 2020-Ohio-4008.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-10-075 |
| | : | O P I N I O N |
| - vs - | | 8/10/2020 |
| | : | |
| JEREMY M. SMITH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018CR00235

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

The Law Office of John D. Hill, LLC, John D. Hill, Jr., 125 East Court Street, Suite 1000, Cincinnati, Ohio 45202, for appellant

**RINGLAND, J.**

{¶1}   Appellant, Jeremy Smith, appeals his conviction in the Clermont County Court of Common Pleas for multiple sexual offenses.  For the reasons detailed below, we affirm.

{¶2}   This case involves allegations of sexual abuse committed by Smith against his former girlfriend's daughter.  As relevant here, Smith was in an on-again, off-again relationship with Brittany since November 2011.  At the time, Brittany had three children:

K.D., H.H., and G.S.  Smith is the biological father of only one of those children, the youngest, G.S.

{¶3}  The abuse came to light shortly after H.H. turned 13 years old when Brittany discovered concerning messages between H.H. and Smith in a Google Hangouts messaging platform.  Prior to the revelation, H.H.'s family members had noticed that Smith was very "touchy" with H.H. and had also observed Smith attempting to look down the minor's shirt.

{¶4}  After the allegations of sexual abuse came to light, Brittany took H.H. to the emergency room and, later, the Mayerson Center for Safe and Healthy Children.  There, H.H. was interviewed by social workers, Beth Buelterman and Traci Colliers, who conducted forensic interviews with H.H.

{¶5}  Smith was indicted on four counts of gross sexual imposition and two counts of rape.  Though H.H. recalled multiple instances of sexual abuse committed by Smith, the state chose to proceed on just four of the charged counts.  The matter proceeded to a jury trial. [1]

{¶6}  The state presented evidence from Brittany, H.H., and other family members about their living arrangements during the time of the alleged abuse.  In 2015, Brittany and Smith resided with the children at Brittany's parents' home in Milford until they moved to a trailer for a short period.  Later, Brittany and the children moved back to her parents' home in Milford.  Though Smith would occasionally stay in the Milford home, most of the testimony revealed that Smith would often rent hotel rooms in the surrounding area, particularly on the weekends.

{¶7}  H.H. testified that she initially had a good relationship with Smith and viewed

---

1. The state dismissed one count of GSI and rape prior to trial.

him as a father figure. H.H. stated that one night when she was 11 years old, she awoke to Smith rubbing her buttocks and using his fingers to rub her vagina in a circular motion. When H.H. woke up, Smith told her "good morning, beautiful."

{¶8} From then on, the relationship between H.H. and Smith changed. H.H. testified that she would communicate with Smith mainly through Google Hangouts where he would often request nude photographs of herself, which she would then send him. H.H. identified one such nude photograph she sent to Smith. H.H. testified that Smith would constantly direct her to delete their messages.

{¶9} Throughout 2016 and 2017, H.H. testified that she had several sexual encounters with Smith at an Ameristay in Batavia, the Mason Inn in Mason, and the Travel Inn in Sharonville.

{¶10} At the Ameristay, Smith rented a room that had a hot tub. H.H. recalled an incident where she was in the hot tub with Smith and her sister, K.D. That night, K.D. complained of a headache and Smith suggested that she take a hot shower. While K.D. was in the shower, Smith pulled H.H. over him, rubbed her buttocks, and told her that if he was her age, he would be "all over" her. In another instance, H.H. testified that Smith asked her to shave his head for him. Though initially reluctant, H.H. agreed and the two went into the bathroom together where Smith proceeded to close and lock the door. While inside, Smith touched H.H.'s buttocks and breasts.

{¶11} While at the Mason Inn, H.H. recalled two specific sexual encounters with Smith. The first incident happened when she had just gotten out of the shower and put on her clothes. Smith asked why she had put on clothes and then attempted to remove them. After some initial resistance, H.H. submitted, but then placed a blanket over herself and complained about being cold. Smith then convinced her to remove the blanket by promising to turn off the air conditioner. When H.H. removed the blanket, Smith asked if she knew

what masturbation was, which she denied knowing about. Smith then pulled up a pornographic website showing a woman masturbating, which Smith then demonstrated on H.H. by rubbing her vagina like the woman in the video. Smith then asked H.H. if she liked it. Separately, H.H. recalled instances at the Mason Inn where they would take "shower/baths" where they would sit together in the bath with the shower on. H.H. testified that she would play video games on Smith's phone as he would rub her vagina in a circular motion.

{¶12} At the Travel Inn, H.H. stated that she had been drinking alcohol and pretended to be asleep as she was lying naked on the bed. When H.H. heard Smith take a photograph of her, she pretended to wake up. H.H. stated that Smith would often buy alcohol and that he touched her almost every time she stayed with him in a hotel.

{¶13} In addition to the touching, Smith made H.H. perform oral sex on him on at least three separate occasions at the Milford residence. On the first occasion, H.H. was playing video games with Smith in the back bedroom. Smith began pressuring H.H. to perform oral sex on him, calling her a "scaredy-cat." H.H. testified that she placed Smith's erect penis in her mouth but stopped when she heard her grandfather start to come towards the bedroom. As a result, H.H. stopped what she was doing, and Smith pulled a blanket over himself.

{¶14} The second incident of oral sex also occurred in the back bedroom. H.H. testified that she was trying to get lunch ready for her siblings when Smith started calling for her. After initially ignoring him, H.H. later gave in. Smith closed the door and placed a crib in front of the door to restrict entry. H.H. then testified that she performed oral sex on Smith as he sat in the computer chair. H.H. stated that she stopped after the "stuff" came out of Smith's penis and into her mouth and that the "stuff" did not taste very good and Smith shook just before it came out.

{¶15} The last time H.H. had to perform oral sex on Smith took place in the Milford living room. H.H. testified that she was alone in the house with Smith and she was listening to music with her headphones. H.H. indicated that Smith messaged her on Google Chat to take her headphones off and come over to him. Smith then asked for oral sex, but H.H. declined. However, Smith persisted, and H.H. finally submitted. H.H. testified that she once again performed oral sex on Smith until "the stuff" came out of Smith's penis. H.H. stated that each instance of oral sex occurred prior to her 13th birthday in early November 2017.

{¶16} Following H.H.'s account, the state presented additional corroborative testimony from K.D., H.H.'s sister, who would also go to the hotel rooms with Smith. K.D. corroborated H.H.'s testimony regarding the hotel, noting that they would always stay in room 264 at the Mason Inn, that Smith would always sleep in the bed with H.H., and that Smith would often be alone for periods of time with H.H. Additionally, K.D. recalled instances where Smith would suggest that she leave the room to get ice or go to the pool, thus allowing him to be alone with H.H.

{¶17} Thereafter, the state introduced testimony from law enforcement regarding their investigation and the testimony of the social workers at the Mayerson Center. As relevant here, the testimony from the social workers recalled their forensic interviews with H.H. where H.H. explained the manner of sexual abuse, that Smith had shown her pornography, and would often supply her with alcohol. Following the introduction of the evidence, the state rested. Thereafter, Smith made a Crim. R. 29 motion for acquittal, which the trial court denied. Smith then rested and the matter was submitted to the jury.

{¶18} Following deliberations, the jury found Smith guilty of all offenses. The trial court sentenced Smith to a prison term of 19 years to life. Smith now appeals, raising six assignments of error for review.

{¶19} Assignment of Error No. 1:

{¶20} JEREMY'S CONVICTION FOR GROSS SEXUAL IMPOSITION AND RAPE WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his first assignment of error, Smith argues that his convictions for gross sexual imposition and rape were against the manifest weight of the evidence. We find Smith's arguments to be without merit.

{¶22} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 78. In determining whether the conviction is against the manifest weight of the evidence, an appellate court "must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Sheldon*, 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 13. "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *Id.*

{¶23} Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and anal intercourse. R.C. 2907.01(A).

{¶24} In addition, gross sexual imposition is defined in R.C. 2907.05, which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than

- 6 -

thirteen years of age, whether or not the offender knows the age
of that person.

The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶25} A precise time and date are not ordinarily essential elements of an alleged offense. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 36. In sexual abuse cases involving children, it may be impossible to provide a specific date. *Id.* "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 12.

{¶26} On appeal, Smith suggests the jury should have weighed the evidence in his favor. Specifically, Smith argues that the notion that he was able to have the opportunity to commit these sexual abuses "strains credulity" because he lived in a "cramped one-bedroom trailer" and, at other times, in a hotel. To the contrary, Smith maintains that nobody witnessed any inappropriate behavior between him and H.H. and submits that the jury failed to consider his relationship with Brittany and the questionable circumstances under which the allegations against him arose. Finally, Smith argues that his conviction is against the manifest weight of the evidence because of "the complete dearth of concrete evidence."

{¶27} Following review, we find Smith convictions are supported by the manifest weight of the evidence. In this case, Smith was charged with four counts: (1) gross sexual imposition occurring at H.H.'s grandparents' residence in Milford, (2) gross sexual imposition occurring at the Ameristay in Batavia, (3) gross sexual imposition occurring at

the Mason Inn, and (4) rape where H.H. performed fellatio on Smith at H.H.'s grandparents' residence in Milford.

{¶28} As previously noted, H.H. testified that she had a typical relationship with Smith until she turned approximately 11 years old. Around that time, Smith began taking a sexual interest in H.H. where he began touching her buttocks and vagina in her sleep. H.H. had specific recollections of sexual abuse at each of the locations alleged in the indictment. H.H. specifically recalled Smith touching her vagina and buttocks at her grandparents' residence, as well as specific recollections of sexual contact at both the Ameristay and the Mason Inn. H.H. also testified about the multiple occasions that Smith requested, and received, oral sex from her at her grandparents' Milford residence. H.H. testified that the sexual abuse occurred while she was under 13 years old.

{¶29} H.H.'s specific memories of Smith's sexual abuse were corroborated by her sister, mother, and grandmother. Those witnesses testified about the disconcerting closeness between H.H. and Smith. H.H.'s grandmother testified about observing the two cuddling underneath a blanket and H.H's mother testified about how she would regularly see H.H. sitting in Smith's lap. K.D. further explained that she caught Smith looking down H.H.'s shirt on a number of occasions.

{¶30} The state further presented the Google Hangouts conversation between H.H. and Smith where he stated that he wanted her to come over and keep him warm, while she wished that she could keep him warm "all over." Smith's response was to call her a "tease." The state also put forth a message from Smith to H.H. directing her to delete her messages, which H.H. testified was a common request. In addition, the state presented other corroborating evidence, such as a nude photograph that H.H. sent Smith.

{¶31} Based on the evidence presented at trial, we conclude the jury's verdict was not against the manifest weight of the evidence. The jury did not clearly lose its way in

concluding that Smith was guilty of three counts of gross sexual imposition and one count of rape. While Smith argues differently, the jury, as trier of fact, was in the best position to judge the credibility of the witness. *Sheldon*, 2014-Ohio-5488 at ¶ 25. As his conviction was not against the manifest weight of the evidence, Smith's first assignment of error is overruled.

{¶32} Assignment of Error No. 2:

{¶33} JEREMY'S CONVICTION FOR GROSS SEXUAL IMPOSITION AS CHARGED IN COUNT III OF THE INDICTMENT WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶34} In his second assignment of error, Smith argues that his conviction for gross sexual imposition in count three was not supported by sufficient evidence because the offense occurred in Warren County and therefore venue in Clermont County was improper. We find no merit to Smith's argument.

{¶35} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Meridy*, 12th Dist. Clermont. No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity." *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 58. "Venue is not a material element of any offense charged." *State v. Davis*, 12th Dist. Clinton No. CA2015-12-022, 2017-Ohio-495, ¶ 22. However, although not a material element of any offense, venue is nevertheless "a fact that the state must prove beyond a reasonable doubt." *State v. McCollum*, 12th Dist. Clermont No. CA2014-11-077, 2015-Ohio-3286, ¶ 8. "When the state fails to prove venue with respect to a charged criminal offense, the defendant is entitled to be discharged from that offense." *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 20.

{¶36} Although it is undisputed that count three occurred in Warren County, Ohio's venue statute provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element of one of those offenses. R.C. 2901.12(A), (H).

{¶37} In this case, the state proved a continuing course of conduct involving the sex offenses committed against H.H. The state demonstrated that Smith committed a number of sex offenses against the same victim, H.H., when she was 11 and 12 years old. The sexual acts took place at a number of locations where Smith would arrange to be alone with H.H. and engage in sexual contact or sexual conduct with her. Though it is undisputed that count three for gross sexual imposition occurred in Warren County, the state presented ample testimony that several other counts of gross sexual imposition and rape occurred in Clermont County. As a result, venue was appropriate in Clermont County for all offenses. *E.g., Workman*, 2017-Ohio-8638 at ¶ 60. Smith's second assignment of error is without merit and is hereby overruled.

{¶38} Assignment of Error No. 3:

{¶39} THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING BETH BUELTERMAN AND STACY COLLIERS TO TESTIFY REGARDING INADMISSIBLE HEARSAY STATEMENTS ELICITED DURING THEIR FORENSIC INTERVIEWS OF [H.H.]

{¶40} In his third assignment of error, Smith argues that the trial court erred by permitting social workers, Beth Buelterman and Stacy Colliers, to testify about certain statements H.H. made during forensic interviews. Smith's argument is without merit.

{¶41} Evid.R. 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain,

or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible in court as exceptions to the hearsay rule.

{¶42} In *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-2742, the Ohio Supreme Court considered the admissibility of statements given during interviews at child advocacy centers. In that case, the Ohio Supreme Court differentiated between statements made for medical diagnosis and those for investigatory purposes during a forensic interview at a treatment center. *State v. Turner,* 12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 53. "The court held that the child-victim's statements to the social worker were for the purpose of medical diagnosis when the child identified the perpetrator, discussed the type of abuse alleged, gave a time frame of the alleged abuse, and identified the areas where the child had been touched." *Id.*

{¶43} As previously noted, H.H. was interviewed by two social workers, Buelterman and Colliers. Buelterman testified that she interviewed H.H. at the emergency room as part of a multidisciplinary team of professionals specializing in child safety issues. Buelterman confirmed that the information she received from H.H. was used for the purpose of medical treatment and diagnosis and was further provided to medical staff at Cincinnati Children's Hospital. Buelterman testified that H.H. stated that Smith had touched her private areas, including her vagina and buttocks, and that he had asked her to do things that she didn't want to do. Based on the information she received during the course of the forensic interview, Buelterman testified that she was not concerned about any further imminent concerns for H.H.'s safety, given that Smith was no longer in the home, but was concerned about her emotional health and referred her for follow-up counseling.

{¶44} Colliers separately interviewed H.H. at a later date at the Mayerson Center. Colliers testified that H.H. explained to her that Smith had inappropriately sexually touched

her multiple times, and reported that he had fondled her chest, buttocks, and touched the inside and outside of her vagina. H.H. also reported that Smith had made her perform oral sex on him. Colliers also testified that H.H. told her that Smith had requested that she take pornographic pictures of herself. H.H. also indicated that Smith had masturbated in front of her and asked her to do the same. When she explained to him that she did not want to, H.H stated that Smith had shown her a video of a woman masturbating. H.H. also told Colliers that Smith would provide her with beer and whiskey to the point where she could not remember things afterwards. Colliers testified that the information related to H.H. consuming alcohol was provided to medical staff to determine potential medical treatment.

{¶45} On appeal, Smith argues that the trial court erred by overruling his objections to statements made by H.H. involving his request for nude photographs, that he had shown her pornography, had given her alcohol, and taught her how to masturbate. Smith alleges that the statements were of "no value for the diagnosis or treatment of any affliction relating to any alleged abuse."

{¶46} However, the information given to Buelterman and Colliers are the types of statements discussed in *Arnold* and found admissible by the Ohio Supreme Court. That Smith requested nude photographs, showed pornography to H.H., supplied her with alcohol, and taught her how to masturbate were all answers to questions designed to determine the extent of the abuse by Smith and were made for the purpose of forming a medical diagnosis. *See, e.g., State v. Watts*, 10th Dist. Franklin No. 15AP-951, 2016-Ohio-5386, ¶ 21-24. Moreover, because H.H. testified and the statements elicited were merely cumulative of statements H.H. made during her testimony, their admission would be harmless even if they had been admitted in error. *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 17. Therefore, Smith's third assignment of error is overruled.

{¶47} Assignment of Error No. 4:

{¶48} THE TRIAL COURT ERRED TO THE [sic] JEREMY'S PREJUDICE BY ALLOWING THE STATE TO PRESENT INADMISSIBLE EVIDENCE OF UNCHARGED ALLEGED ABUSE AGAINST [H.H.] THAT OCCURRED OUTSIDE OF CLERMONT COUNTY PURSUANT TO EVID.R. 404(B).

{¶49} In his fourth assignment of error, Smith argues the trial court erred by allowing the state to introduce evidence of other bad acts he committed against H.H. In particular, Smith argues that the state should not have been permitted to introduce testimony concerning abuse that occurred at the Travel Inn and for soliciting nude photographs from H.H. We disagree.

{¶50} Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 40. Therefore, pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, however, is permitted for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22.

{¶51} That being said, Evid.R. 404(B) only applies to limit the admission of so-called "other acts" evidence that is "extrinsic" to the crime charged. *State v. Stallworth*, 11th Dist. Lake No. 2013-L-122, 2014-Ohio-4297, ¶ 37. In other words, "Evid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events

in question or form part of the immediate background of the alleged act which forms the basis for the crime charged." *State v. Wainscott*, 12th Dist. Clermont No. CA2015-07-056, 2016-Ohio-1153, ¶ 19, citing *State v. Crew*, 2d Dist. Clark No. 2009 CA 45, 2010-Ohio-3110, ¶ 99. Thus, "evidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged." *Id.*

{¶52} Although Smith characterizes the evidence as "other acts" evidence, the record reflects that the evidence that Smith sexually abused H.H. at the Travel Inn and solicited nude photographs from her were part and parcel of the underlying case. Though the state chose to proceed on only four counts, H.H. testified about many more instances of sexual abuse that could have been pursued. As noted earlier, Smith's offenses were part of a course of conduct related to the grooming and sexual abuse of H.H. Evidence of his abuse and manner of abuse was relevant and admissible in this case. Therefore, Smith's fourth assignment of error is overruled.

{¶53} Assignment of Error No. 5:

{¶54} THE PROSECUTING ATTORNEY COMMITTED MISCONDUCT BY PRESENTING IMPROPER ARGTUMENT [sic] TO THE JURY DURING CLOSING ARGUMENT.

{¶55} In his fifth assignment of error, Smith alleges the state committed prosecutorial misconduct. We do not find any merit to Smith's argument.

{¶56} The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the

defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *Vunda*, 2014-Ohio-3449 at ¶ 66. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

{¶57} The record indicates that Smith did not object to the state's closing argument. In failing to object, Smith has waived all but plain error. *See* Crim.R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. McCrone*, 12th Dist. Warren No. CA2018-01-007, 2019-Ohio-337, ¶ 28. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 12th Dist. Warren No. CA2013-12-118, 2014-Ohio-3558, ¶ 38. Therefore, we will not reverse the trial court's decision unless the outcome of trial would have been different but for the alleged error. *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 54.

{¶58} Smith first argues the prosecutor committed misconduct in rebuttal by stating:

> There's a couple adages in the law in listening to [defense counsel], they kind of come to mind. One starts with if you don't have the facts, you argue the law. If you don't have the law, you argue the facts. If you don't have either, you yell really loudly. And that's essentially what you heard [defense counsel] do.

{¶59} Smith also argues the prosecutor committed misconduct when he stated:

> The law demands that we protect our children. The law demands that if you are under the age of 13 [sic] and you engage in sexual touching or sexual conduct with a child, that * * * is a crime. And we all know it should be.[2]

---

2. We note that the prosecutor misspoke and stated that "if you are under the age of 13 and you engage in sexual touching or sexual conduct with a child," that is a crime. Thus, the wording confuses the age of the victim and the offender. Nevertheless, when read in context, it is clear the prosecutor is arguing that Smith committed the charged offenses of gross sexual imposition and rape by engaging in sexual contact and conduct with the victim, a child under the age of 13. R.C. 2907.02(A)(1)(b); R.C. 2907.05(A)(4).

- 15 -

{¶60} Based on our review, we find the prosecutor's statements did not deprive Smith of a fair trial. We do not find that either remark is particularly reactionary, much less constituting plain error. As to the first statement, the prosecutor was plainly addressing the arguments made by defense counsel in his closing argument and why the state had presented its case beyond a reasonable doubt. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 101 ("[a] prosecutor can respond to issues raised by an accused.") In fact, the Ohio Supreme Court has found similar statements to be "dismissive and reductive," but do not constitute plain error. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 376. We similarly find that the second statement does not constitute prosecutorial misconduct. The prosecutor's statement reflects the law that it is unlawful to engage in such sexual behaviors with children under the age of 13. It is not, as Smith argues, an improper appeal to the jury's sentiment based on their relative age disparities.

{¶61} In sum, the statements merely reflected the state's argument that sufficient and substantial evidence had been presented for the jury to return a guilty verdict. Accordingly, we find no merit to Smith's argument that he received an unfair trial on the basis of prosecutorial misconduct. Smith's fifth assignment of error is overruled.

{¶62} Assignment of Error No. 6:

{¶63} THE CUMULATIVE EFFECT OF THE PRECEDING ERRORS DENIED JEREMY OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

{¶64} In his sixth assignment of error, Smith argues that he received an unfair trial based on the number of alleged errors during the course of the proceeding and therefore he is entitled to a new trial. We find Smith's argument to be meritless.

{¶65} According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional

right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105. However, because we have found that no errors occurred during Smith's trial, we find that he was not deprived of a fair trial and the cumulative error doctrine is inapplicable. Smith's sixth assignment of error is overruled.

{¶66} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.